UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
BENEDICT ROTUNDO, JR. and KELLY
ROTUNDO,

                        Plaintiffs,          6:09-CV-1262

            v.

VILLAGE OF YORKVILLE; MAYOR BRUNO
A. PETRUCCIONE, in his individual and
official capacity; DEPUTY MAYOR THOMAS
J. THOMAS, in his individual and official
capacity; TRUSTEE ANTHONY C. LEONE,
JR., in his individual and official capacity;
TRUSTEE MICHAEL A. MAHONEY, in his
individual and official capacity; TRUSTEE
STANLEY G. BABIARZ, in his individual and
official capacity; OFFICER IN CHARGE
MICHAEL MAXAM, in his individual and
official capacity; and JOHN DOES(S) and/or
JANE DOE(S), in their individual and official
capacities.

                        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                          OF COUNSEL:

BOSMAN LAW OFFICE                     A.J. BOSMAN, ESQ.
Attorneys for Plaintiffs
6599 Martin Street
Rome, New York 13440

CARTER, CONBOY, CASE, BLACKMORE,      LUKE C. DAVIGNON, ESQ.
MALONEY & LAIRD, P.C.
Attorneys for Defendants
20 Corporate Woods Boulevard
Albany, New York 12211

DAVID N. HURD
United States District Judge

**MEMORANDUM-DECISION and ORDER**

## I. INTRODUCTION

Plaintiffs Benedict Rotundo, Jr.[1] and Kelly Rotundo (collectively "plaintiffs") bring this action against defendants Village of Yorkville ("Village"); Bruno A. Petruccione, Village Mayor ("Mayor"); Thomas J. Thomas, Village Deputy Mayor; Village Trustees Anthony C. Leone, Jr.,[2] Michael A. Mahoney, and Stanley G. Babiarz; and Michael Maxam, Officer in Charge ("OIC") of the Village Police Department (collectively "defendants"), under Title 42, United States Code, section 1983 and New York State ("NYS") law.[3]

Defendants move for summary judgment pursuant to Federal Rule of Civil Procedure 56. Plaintiffs oppose. Oral argument was heard on February 11, 2011, in Utica, New York. Decision was reserved.

## II. BACKGROUND

Unless otherwise noted, the following facts are viewed in the light most favorable to plaintiffs, the non-movants, as must be done on a summary judgment motion.

The Village hired Rotundo as a part-time police officer on June 9, 2005. The Police Benevolent Association ("PBA") Agreement between the Village and the PBA did not cover the terms of plaintiff's employment because he was a part-time officer. Nor did he have an employment contract with the Village. During the time in question, Rotundo was also

---

[1] Unless otherwise noted, all references to "plaintiff" or "Rotundo" are to Benedict Rotundo, Jr.

[2] In addition to acting as a Trustee, defendant Leone also serves as Police Commissioner for the Village. According to his deposition, his duties as Police Commissioner are to watch the budget, and "the police department is actually [his] department as a Village trustee." Davignon Aff., Ex. O, Dkt. 45-36, 43:18-25.

[3] Defendant Trustees serve on the Village Board ("Board").

employed full-time as a New York State corrections officer.  Because of his full-time work schedule, he was permitted to work a modified shift from 10:00 p.m. to 6:00 a.m. instead of 11:00 p.m. to 7:00 a.m.[4]  He worked this modified shift for approximately the first three years he was employed by the Village.

While employed by the Village, several local organizations recognized plaintiff for his outstanding enforcement of the Driving While Intoxicated ("DWI") law.  On December 27, 2006, Rotundo arrested a friend of the Mayor for DWI.  Plaintiff was then removed from the work schedule at the direction of the Mayor in response to the DWI arrest and was only offered occasional shifts until August 2007.  In August 2007 plaintiff learned that he had been returned to the work schedule.  The Mayor later admonished him on January 29, 2008, for making the December 2006 DWI arrest.  The Mayor advised him that the motorist was his friend and that Rotundo had ruined the motorist's life.  The Mayor informed Rotundo that he should not make DWI arrests of Village residents and directed plaintiff to drive intoxicated residents home and not charge them criminally.

In February 2008 the Mayor told plaintiff "you will never learn" after observing him complete a DWI arrest report.  Rotundo Aff., Dkt. No. 50, ¶ 15.  In February 2009 Rotundo made another DWI arrest.  The motorist involved informed Rotundo that she was a friend of the Mayor and also served the Mayor alcohol on various occasions while she worked as a bartender.  Plaintiff advised the Mayor of the motorist's claim by memorandum, to which the Mayor became upset and once again stated "you will never learn."  Id. ¶ 16.

---

[4] The Village Police Department operates on four scheduled shifts: the A-Line shift from 11:00 p.m. to 7:00 a..m.; the B-Line shift from 7:00 a.m. to 3:00 p.m.; the C-Line shift from 3:00 p.m. to 11:00 p.m.; and the C-7 shift from 7:00 p.m. to 3:00 a.m.

Plaintiff's hours were once again reduced following the February 2009 incident.  On May 26, 2009, the officer in charge of scheduling informed Rotundo that he was no longer allowed to work the modified 10:00 p.m. to 6:00 a.m. shift.  Defendants contend the modified shift was permitted without the Board's approval and was against the policy set forth by the Mayor in a March 2004 memorandum.  The March 2004 memorandum advised, inter alia, that officers must be dressed and ready to go on patrol at the start of their scheduled shift.  See Davignon Aff., Ex. U, Dkt. No 45-44.  Defendants assert that when the Mayor learned that two officers – plaintiff and Officer Wrobel[5] – were working modified shifts on a regular basis, he directed OIC Maxam to end the practice.  The change was part of an effort to ensure 24 hour a day police coverage in the Village.

The June 2009 schedule did not provide any shifts for plaintiff.  He then served a Notice of Claim on defendants on June 11, 2009.  See Bosman Affirm., Ex. B, Dkt. No. 49-1.  He alleges he was then retaliated against for filing the Notice of Claim.  On June 12, the following day, OIC Maxam left Rotundo a voicemail message stating that the Mayor received a "letter from your attorney or something" and instructed plaintiff to turn in his gun, key, and any other Village property "ASAP."  See Rotundo Aff., ¶ 20; Bosman Ltr. with audio CD, Dkt. No. 66.  After plaintiff's attorney contacted the defendants, the June 12 voicemail message request was rescinded.

Sometime between June 18 and 23, 2009, OIC Maxam drafted a memorandum to all part-time officers regarding work availability.  The memorandum reiterated the four set

---

[5] Officer Wrobel, another part-time officer, was employed as a firefighter and worked 24 hour shifts at the fire department.  Another officer testified that there were times Officer Wrobel was scheduled for the B-Line shift, from 7:00 a.m. to 3:00 p.m., but would come in to the Village Police Department at 8:15 a.m. after he finished working at the fire department.

shifts at the Village Police Department and advised officers to submit their availability for the following month, one week prior to the first of each month.  The memorandum provided that if an officer's availability was not received, that officer would not be placed on the schedule for the following month.  See Davignon Aff., Ex. U.  Officer Collea, a full-time officer, testified that at some point prior to OIC Maxam issuing the memorandum, he observed the Mayor and Leone looking at the schedule and attempting to schedule plaintiff for fewer shifts.  See Davignon Aff., Ex. H, Dkt. No. 45-21, 27:21-23, 28:1-4.  Officer Collea suggested "well, if you want him off the schedule just tell him that his 10 to 6 isn't a shift, that he has to work 11 to 7." Id. 27:12-20.

OIC Maxam asked plaintiff to work shifts on June 26, 27, and 28, 2009.  He informed Rotundo that he could no longer make shift adjustments or let plaintiff work 10:00 p.m. to 6:00 a.m.  Rotundo was unable to work the requested shifts because he could not work until 7:00 a.m. due to his full-time job.  On July 11, 2009, the Utica Observer Dispatch printed an article, titled "Claim: DWI enforcement led to officer's lack of shifts," regarding plaintiff's service of the Notice of Claim upon the Village.  See Bosman Affirm., Ex. C, Dkt. No. 49-1.  Plaintiff continued to work the shifts for which he was available, mostly weekends, in July and August 2009.  On July 23, 2009,  plaintiff met another officer, Officer Lanahan, at a local Dunkin' Donuts.  Officer Lanahan said that OIC Maxam told him the following: OIC Maxam put plaintiff's check in his mailbox and plaintiff's "days in Yorkville are numbered and not to associate with him."  Rotundo Aff., ¶ 27.  Rotundo alleges that from July through September 2009 defendants withheld his paycheck, put a disciplinary memorandum in his personnel file, and the Mayor tampered with his mail at the Village Police Department.

On September 6, 2009, at 5:19 a.m., the Village Police Department's surveillance system recorded plaintiff "entering the police headquarters office at the Village Municipal Building in the dark" with his sight "assisted by the use of a flashlight to rummage through a locked cabinet in the back office." See Davignon Aff., Ex. D, Dkt. 45-7.  OIC Maxam observed this activity during a routine review of surveillance footage and contacted Leone and the Mayor to report what he observed.  OIC Maxam prepared a memorandum, dated September 22, 2009,[6] asking plaintiff to explain his actions on September 6 including why he turned the lights out, what he was doing on the computer in the back office, why he removed weekly timely sheets, and how he was able to access a locked cabinet.  Id.  The memorandum directed Rotundo to provide a written explanation of these activities to OIC Maxam within five days.  Id.  It was sent to plaintiff's home address on September 22 by certified mail, return receipt.  The letter was returned to defendants unclaimed and undelivered on October 10.

Plaintiff disputes defendants' characterization of this incident.  First, he was on duty at the time and thus there was nothing peculiar about him entering the Village Police Department at that time of the morning.  He testified that he often worked in the office with the lights off to avoid or relieve headaches because the fluorescent lights triggered and exacerbated his headaches.  He contends that a review of video footage of him working in the office at night would reveal that this is common practice for him.  Rotundo also claims that he often works with the overhead lights off, and parks his patrol vehicle out of sight, so that Village residents do not know whether he is working the road or in the office.  He also

---

[6] The memorandum was originally dated September 16 or 18 but that date was crossed off and the date of September 22, 2009, was handwritten in.

contends that the memorandum from OIC Maxam was never delivered to his home and he never received notification of attempted deliveries.[7]

On October 6, 2009, the Board held its regularly scheduled monthly meeting.  At the end of the meeting, the Board entered into an executive session to discuss Rotundo's employment with the Village.  There is conflicting testimony regarding whether the Board was advised that plaintiff did not pick up the September 22 memorandum and that the letter was returned, or whether a response had not yet been received from Rotundo.  The Board then unanimously voted to terminate him.  Defendants contend the Board terminated plaintiff because of his suspicious activity on September 6, 2009, and his failure to respond to OIC Maxam's memorandum requesting an explanation of that activity.

As noted, the September 22, 2009, memorandum, sent certified mail, was returned undelivered by the United States Postal Service on October 10, 2009.  On that date Rotundo received a termination letter, dated October 8, 2009, signed by the Mayor.  Plaintiffs commenced the instant lawsuit on October 26, 2009, and defendants removed the case to federal court on November 11, 2009.  Plaintiffs filed a second Notice of Claim on January 8, 2010, naming additional defendants and including allegations regarding his October 10, 2009, termination.  On June 20, 2010, the Utica Observer Dispatch printed another article regarding plaintiff's lawsuit, titled "Officers: DWI cases obsess mayor."  See Bosman Affirm., Ex. F, Dkt. No. 49-1.

---

[7] Plaintiff spoke with OIC Maxam on September 23, 24, and 25, 2009.  OIC Maxam did not mention the September 6 conduct nor the memorandum during any of these occasions.  Rotundo also states that he was out of town from October 3-11, 2009, and no one at his home received notice of a certified letter in September or October 2009.

Specifically, plaintiff brings twelve causes of action: 1) § 1983 First Amendment retaliation; 2) § 1983 Fourteenth Amendment procedural due process; 3) § 1983 Fourteenth Amendment substantive due process; 4) § 1983 Fourteenth Amendment Equal Protection; 5) Deprivation of free speech under the NYS Constitution; 6) Procedural due process under the NYS Constitution; 7) Substantive due process under the NYS Constitution; 8) Equal Protection under the NYS Constitution; 9) Breach of contract between the Village and the PBA; 10) Tortious interference with the PBA Agreement; 11) Prima facie tort; and 12) Loss of consortium, Kelly Rotundo's sole cause of action.

## III.  DISCUSSION

Defendants move for summary judgment dismissing the complaint on the grounds that plaintiff was not entitled to a hearing prior to termination; he did not engage in protected speech; there was no causal connection between the Notice of Claim and defendant Trustees Mahoney and Babiarz's decision to termination him; and that plaintiff is not a member of a protected class.

### A) Summary Judgment Standard

Summary judgment is warranted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986).  All facts, inferences, and ambiguities must be viewed in a light most favorable to the non-moving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986).

Initially, the burden is on the moving party to demonstrate the absence of a genuine issue of material fact.  Fed. R. Civ. P. 56; Liberty Lobby, Inc., 477 U.S. at 250, 106 S. Ct. at 2511.  A fact is 'material' if it "might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248, 106 S. Ct. at 2510; see also Jeffreys v. City of N.Y., 426 F.3d 549, 553 (2d Cir. 2005).  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co., 475 U.S. at 586, 106 S. Ct. at 1356.  There must be sufficient evidence upon which a reasonable fact finder could return a verdict for the non-moving party.  Liberty Lobby, Inc., 477 U.S. at 248-49, 106 S. Ct. at 2510; Matsushita Elec. Indus. Co., 475 U.S. at 587, 106 S. Ct. at 1356.

**B) Free Speech Retaliation Claims[8]**

Defendants move to dismiss the First (First Amendment retaliation) and Fifth (N.Y. Const., Art. 1, section 8, free speech) causes of action.  To establish a retaliation claim in violation of the First Amendment right to free speech, a plaintiff must show: 1) that the speech at issue was protected; 2) that he suffered an adverse employment action; and 3) that there is a causal connection between the protected speech and the adverse employment action.  See Singh v. City of N.Y., 524 F.3d 361, 372 (2d Cir. 2008).  At issue here is whether plaintiff engaged in protected speech and whether there is a causal connection with respect to defendants Mahoney and Babiarz's decision to terminate plaintiff.

---

[8] While the NYS Constitution generally affords greater protection than the United States Constitution with regard to speech, see O'Neill v. Oakgrove Constr., Inc., 71 N.Y.2d 521, 528-29 n.3 (1988), claims of free speech retaliation under Article I, section 8 of the New York State Constitution are governed by the same principles that apply under the First Amendment to the United States Constitution. See Pico v. Bd. of Ed., Island Trees Union Free Sch. Dist., 474 F. Supp. 387, 394 (E.D.N.Y. 1979) rev'd on other grounds, 638 F.2d 404 (1980), cert. granted, 454 U.S. 891 (1981), aff'd, 457 U.S. 853 (1982). Therefore, the following analysis is conducted in terms of federal constitutional principles only.  See Burns v. Cook, 458 F. Supp. 2d 29, 38 n.3 (N.D.N.Y.) (Hurd, J.).

### 1.  Protected Speech

Defendants contend plaintiff did not engage in protected speech because he did not speak on a matter of public concern.  They argue that his Notice of Claim sought redress for personal grievances in the workplace, specifically the failure to assign him hours and the Mayor's admonishment of his DWI enforcement.  Plaintiff claims he was speaking as a private citizen, not in the scope of his professional duties, and that he was addressing a matter of public concern because his claim involved potentially illegal conduct by the Mayor.

With respect to protected speech, the Supreme Court has made clear that "public employees do not surrender all their First Amendment rights by reason of their employment." Garcetti v. Ceballos, 547 U.S. 410, 417, 126 S. Ct. 1951, 1957 (2006).  "Whether public employee speech is protected from retaliation under the First Amendment entails two inquiries: (1) 'whether the employee spoke as a citizen on a matter of public concern' and, if so, (2) 'whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public.'"  Ruotolo v. City of N.Y., 514 F.3d 184, 188 (2d Cir. 2008) (quoting Garcetti, 547 U.S. at 418, 126 S. Ct. at 1958). Whether or not "'an employee's speech addresses a matter of public concern is a question of law for the court to decide, taking into account the content, form, and context of a given statement as revealed by the whole record.'"  Ruotolo, 514 F.3d at 189 (quoting Lewis v. Cowen, 165 F.3d 154, 163 (2d Cir. 1999)).  The inquiry is "whether the employee's speech was 'calculated to redress personal grievances or whether it had a broader public purpose.'" Ruotolo, 514 F.3d at 189 (quoting Lewis, 165 F.3d at 163-64).

Generally, speech that is not on a "matter of political, social, or other concern to the community" is not protected by the First Amendment.  See Connick v. Myers, 461 U.S.

138, 146, 103 S. Ct. 1684, 1690 (1983)).  An employee seeking to bring to light actual or

potential wrongdoing or a breach of public trust by public employees or agencies is

addressing a matter of public concern.  Id. at 148, 103 S. Ct. at 1691; see also Bernheim v.

Litt, 79 F.3d 318, 325 (2d Cir. 1996) (determining plaintiff teacher's public accusations that

principal misrepresented student test scores were "issues of serious interest to the

community"); O'Malley v. N.Y.C. Transit Auth., 829 F. Supp. 50, 53 (E.D.N.Y.1993) ("There is

no doubt that the public would be concerned with the revelation that an official in a position of

public trust had previously breached a similar public trust elsewhere in violation of federal

law.").  By contrast, workplace complaints calculated to redress personal grievances are not

protected.  Mousaw v. Cnty. of Saint Lawrence, No. 7:09-CV-523, 2010 WL 3081424, at *4

(N.D.N.Y. Aug. 4, 2010) (Hurd, J.) (citing Connick, 461 U.S. at 145-46, 103 S. Ct. at 1689-

90).  Nonetheless, "it does not follow that a person motivated by a personal grievance cannot

be speaking on a matter of public concern."  Storman v. Klein, No. 09-4894-cv, 2010 WL

3959817, at *2 (2d Cir. Oct. 12, 2010) (quoting Sousa v. Roque, 578 F.3d 164, 174 (2d Cir.

2009)).

Plaintiff's June 11, 2009, Notice of Claim alleged that he had been wrongfully

removed from the work schedule, constructively terminated, and subjected to retaliation for

enforcing the law in a manner not consistent with the Mayor's direction.  It alleged that the

defendants "advised Claimant not to enforce laws in accordance with his duties as a police

officer for the Village of Yorkville."  See Bosman Affirm., Ex. B, ¶ 2.  The Notice of Claim

noted plaintiff's December 2006 DWI arrest of the Mayor's friend and "[t]hereafter the

Respondent Mayor wrongfully admonished Claimant for the arrest and interfered with his

employment by removing him from the work schedule on or about January, 2007."  Id. ¶ 3.

Plaintiff indicated that in April or May 2008 he was required to meet with the Mayor who criticized him for arresting his friend and directed plaintiff to no longer arrest village residents for DWI and instead to drive them home.  The Notice of Claim also detailed the February 2009 incident when plaintiff stopped a motorist who claimed to be a bartender and friend of the Mayor.  It alleged plaintiff was again removed from the work schedule after he informed the Mayor of the motorist's statements.

Defendants argue that the Notice of Claim was calculated to redress personal grievances because it sought damages for loss of earnings, attorney's fees and psychological injuries.  However, a finding that plaintiff was motivated to make the speech because of a personal grievance, such as a reduced work schedule, is not dispositive on whether the speech addressed a matter of public concern.  Instead the accusations must be considered in the context of the whole record.  The Notice of Claim alleged that the Mayor directed Rotundo not to enforce the DWI law and specifically disciplined him for enforcing it against his friends.  Plaintiff's desire to bring to light the alleged wrongdoing by the Mayor, a public official, is a matter of public concern.[9]

———————————

[9] If the Village of Yorkville police officers followed the alleged directions of the Mayor, the following situation may very well occur.  Take for example a case of two drunks driving in the Village of Yorkville on the same night.

The first is a resident of the City of Utica.  He is stopped by a Yorkville police officer.  He is arrested for DWI.  He is taken to the police station where he is either jailed or posts bail.  The next day he is arraigned before a Village Justice.  If he pleads guilty he is fined or given a term in jail.  If he pleads not guilty, he hires a lawyer and goes to trial before a jury.  If found guilty, he is fined or given a term in jail.  If he is guilty by plea or trial, he must have a Department of Motor Vehicle hearing where he may lose his driver's license.  He has a permanent record.

The second is a resident of the Village of Yorkville and/or a friend of the Mayor.  He is stopped by a Yorkville police officer.  He is given a ride home.

The uniform enforcement of our criminal laws by police officers without fear or favor is a matter of great public concern.

Because plaintiff's accusations are matters of political, social, and even safety concern for the community, defendants' motion for summary judgment will be denied.

### 2.  Causal Connection as to Defendants Mahoney and Babiarz

Defendants argue the federal and state free speech claims against Trustees Mahoney and Babiarz should be dismissed because there is no causal connection between plaintiff's Notice of Claim filed on June 11, 2009, and their decision to terminate him at the October 6, 2009, Board meeting.  Plaintiff does not directly respond to this argument and instead contests the causal connection with respect to the remaining defendants.

To establish causation, a plaintiff "must show that the protected speech was a substantial motivating factor in the adverse employment action."  Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ., 444 F.3d 158, 167 (2d Cir. 2006) (citation omitted).  A plaintiff may establish causal connection indirectly by showing temporal proximity between the protected activity and the adverse action.  Id. (citing Gorman-Bakos v. Cornell Co-op Extension of Schenectady Cnty., 252 F.3d 545, 554 (2d Cir. 2001)).

Defendants Mahoney and Babiarz were not named in the June 11, 2009, Notice of Claim and did not sit not on the Board when plaintiff served the first Notice of Claim.  Both defendants began their service as Trustees in July 2009.  Babiarz testified that while on the Board, he learned of the Mayor's June 12, 2009, order for plaintiff to turn in his equipment as a result of serving the Notice of Claim.  Davignon Aff., Ex. M, Dkt. No. 45-33, 15:9-22.  He also testified that he did not know about plaintiff's June 11, 2009, Notice of Claim.  Id. 16:7-13; 22:9-17.  Mahoney testified that he never received a copy of the Notice of Claim and that no one on the Board advised him about it.  Davignon Aff., Ex. N, Dkt. No. 45-35, 22:3-9.  However, he also testified that he saw the article in the newspaper regarding plaintiff's

lawsuit, and that he may have commented to other Board members about the article.  Id. 22:10-25; 23:1-5.  Police Commissioner and Trustee Leone testified that all of the Board members knew about the Notice of Claim when they voted to terminate plaintiff.  Davignon Aff., Ex. O, Dkt. No. 45-36,92:16-24.  He also stated that the Board discussed receipt of the Notice of Claim sometime in June 2009, prior to Mahoney and Babiarz joining the Board in July 2009.  See id. 93:2-9.

Issues of fact exist as to whether defendant Trustees Mahoney and Babiarz knew about the June 11, 2009, Notice of Claim and thus whether it was an impermissible motivating factor in their decision to terminate plaintiff.  Accordingly, summary judgment is not appropriate with respect to these defendants.

### C) Due Process Claims[10]

Defendants move to dismiss the federal and state substantive and procedural due process claims because plaintiff was not entitled to a hearing prior to termination.  The Due Process Clause of the Fourteenth Amendment contains both a procedural and substantive component.  Zinernon v. Burch, 494 U.S. 113, 125, 110 S. Ct. 975, 983 (1990).  The procedural component bars "the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' . . . without due process of law."  Id. (emphasis in original). The substantive component "bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them."  Id.  A substantive due process violation "is complete when the wrongful action is taken" while a procedural due process

---

[10] The New York State Constitution's guarantees of due process are virtually coextensive with those of the United States Constitution.  Febres v. City of N.Y., 238 F.R.D. 377, 392 (S.D.N.Y. 2006). Accordingly, a separate state law analysis of plaintiff's due process claims will not be conducted.

violation "is not complete unless and until the State fails to provide due process" which may occur after the wrongful action in question.  Id. at 125-26, 110 S. Ct. at 983.

### 1.  Procedural Due Process Claims

Defendants contend plaintiff's procedural due process claims, the Second and Sixth causes of action, fail because he was not entitled to a hearing prior to termination. Plaintiff admits he did not have an employment contract with the Village and that as a part-time officer, the terms of his employment were not governed by the PBA Agreement. However, he contends that he was entitled to notice and a hearing prior to termination based on New York Civil Service Law ("Civil Service Law") section 75 which requires notice and a hearing prior to termination for employees who have been employed continuously for five years within the meaning of the statute.

A procedural due process inquiry entails two inquiries: 1) whether there a constitutionally protected property interest; and 2) whether the process afforded was adequate.  See Ford Motor Credit Co. v. N.Y.C. Police Dep't, 503 F.3d 186, 191 (2d Cir. 2007).  "In order to have an interest protectable under the Constitution, a person must have a 'legitimate claim of entitlement to it.'"  Abramson v. Pataki, 278 F.3d 93, 99 (2d Cir. 2002) (quoting Bd. of Regents of State Coll. v. Roth, 408 U.S. 564, 577, 92 S. Ct. 2701, 2709 (1972)).  Property interests in continued employment "are not created by the Constitution, 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.'"  Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538, 105 S. Ct. 1487, 1491 (1985) (quoting Roth, 408 U.S. at 577, 92 S. Ct. at 2709).  In the employment context, the interest is typically established by showing that under the provisions of a statute or collective bargaining agreement, the employee cannot be

terminated or demoted without a hearing.  Ciambriello v. Cnty. of Nassau, 292 F.3d 307, 313-14 (2d Cir. 2002).

Because plaintiff did not have an employment contract and was not covered by the PBA Agreement, his alleged property interest in his continued employment must arise under a statute or from another source.  Civil Service Law section 75 gives covered employees a property interest in their employment so that they may not be terminated without notice and a hearing.  Section 75(1)(c) protects a non-competitive employee "who since his last entry into service has completed at least five years of continuous service in the non-competitive class." N.Y. Civ. Serv. Law § 75(1)(c) (McKinney 2006) (emphasis added).

The parties agree plaintiff was employed by the Village in a non-competitive position from June 9, 2005, until October 6, 2009, for a total of less than five years.  Rotundo however contends that he satisfied the continuous five year requirement under section 75 based on his prior service with other municipalities.  Prior to his employment with the Village, Rotundo was employed part-time by the Frankfort Police Department beginning on or about January 29, 1991, for approximately four years until on or about July 20, 1995.  He was also employed part-time by the Oriskany Police Department for approximately nine years beginning on or about June 3, 1996, until October 19, 2005.  He argues that the statute does not require that the service be with the same employer.   Defendants maintain that plaintiff's prior employment does not qualify because his service was not continuous.

The Eastern District of New York recently discussed the meaning of "continuous" under section 75 where plaintiffs were police officers who worked during the summer season and part-time throughout the off-season.  Carter v. Inc. Vill. of Ocean Beach, 693 F. Supp. 2d 203, 207 (E.D.N.Y. 2010).  Each time the officers' seasonal employment ceased and their

part-time employment commenced constituted a "break in service" within the meaning of the Civil Service Law.  Id. at 213.  The court held that although their employment "may be characterized as 'continual,' i.e., periodically recurring at regular or frequent intervals, it may not be characterized as 'continuous,' i.e., <u>uninterrupted</u>."  Id. (emphasis added).  In Igneri v. Town of Brookhaven, the plaintiff was a lifeguard employed by the defendant town every summer for 34 years.  232 A.D.2d 638, 639 (N.Y. App. Div. 2d Dep't 1996).  The Appellate Division Second Department found that the plaintiff was not employed continuously as required by section 75(1)(c) because he filed a new employment application and new tax forms each year, was required to make retirement system elections each year, and each year the town sent him a letter of appointment which specified that he was employed for that season only.  Id.  In Doering v. Hinrichs, the New York Court of Appeals examined a different section of the Civil Service Law involving seniority calculated from the date of appointment. 289 N.Y. 29, 33 (1942).  In that case, the plaintiff was reinstated to a civil service position after having resigned nearly nine months prior from a different position.  The court held that "resignation constitutes a complete break in the service" and that the date of the new appointment "marks the date which determines" plaintiff's rights under the Civil Service Law. Id.

Plaintiff resigned from the Oriskany Police Department on October 19, 2005, after he was hired by the Village of Yorkville on June 9, 2005.  The parties have not submitted any evidence regarding plaintiff's employment application with the Village, tax forms, or other employment-related paperwork.  However since the two Police Departments are separate entities it is reasonable to infer that Rotundo completed new employment paperwork when he was hired by the Village.  Based on this inference and plaintiff's resignation from the

- 17 -

Oriskany Police Department, which constitutes a break in service, his appointment with the Village in 2005 was a re-entry into service and a new beginning for purposes of the Civil Service Law.  Therefore plaintiff was not employed by the Village for five continuous years and is not entitled to protection under section 75(1)(c).

Rotundo has not shown that he has a constitutionally protected property interest in his part-time employment with the Village and defendants' motion for summary judgment will be granted as to the Second and Sixth causes of action.

### 2.  **Substantive Due Process Claims**

Defendants request dismissal of plaintiff's substantive due process claims, the Third and Seventh causes of action.  Plaintiff claims he has a constitutionally protected property and liberty interest in his employment with the Village.  Neither party directly addresses the standard for a substantive due process violation.  Instead, defendants submit that the substantive and procedural due process claims should all be dismissed because plaintiff was not entitled to a hearing prior to termination.  However, as previously discussed, substantive and procedural due process encompass different standards.

To establish a substantive due process violation, a plaintiff must first show that a "constitutionally cognizable property interest is at stake."  Scaccia v. Stamp, 700 F. Supp. 2d 219, 235 (N.D.N.Y. 2010) (Mordue, C.J.) (quoting Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 (2d Cir. 1995)).  A plaintiff must then demonstrate that the defendant acted in an arbitrary or irrational manner in depriving him of that property interest.  Cine SK8 v. Town of Henrietta, 507 F.3d 778, 784 (2d Cir. 2007).

The Supreme Court, as a general matter, "has always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in

this unchartered area are scarce and open-ended." Collins v. City of Harker Heights, Tex.,
503 U.S. 115, 125, 112 S. Ct. 1061, 1068 (1992).  The property interest at stake must be "so
rooted in the traditions and conscience of our people as to be ranked as fundamental" in
order for notions of substantive due process to apply.  Feldman v. Nassau Cnty., 349 F.
Supp. 2d 528, 538 (E.D.N.Y. 2004) (quoting Local 342 v. Town Bd. of Huntington, 31 F.3d
1191, 1196 (2d Cir. 1994)).   "Substantive due process protects only those interests that are
implicit in the concept of ordered liberty."  Local 342, 31 F.3d at 1196 (internal quotations and
citations omitted).  "The Second Circuit has never articulated a fundamental interest in public
employment giving rise to substantive due process protection," see, e.g., Mathirampuzha v.
Potter, No. 3:08cv682, 2010 WL 55061, at *9 (D. Conn. Jan. 4, 2010), and several district
courts in this circuit have concluded there is no protection for such employment.  See
Davis v. N.Y. Sports Officials' Council, No. 7:09-CV-0514 , 2010 WL 3909688, at *10
(N.D.N.Y. Sept. 30, 2010) (Suddaby, J) (concluding that plaintiff, an official for interscholastic
athletic contests, had no substantive due process right in her continued employment);
Emmerling v. Town of Richmond, No. 09-CV-6418, 2010 WL 2998911, at *11 (W.D.N.Y. July
27, 2010) (finding that plaintiff did not have a substantive due process property interest even
though his continued employment as a town police officer was protected by Civil Service Law
section 75); Martin v. Town of Brattleboro, No. 2:07-cv-260, 2008 WL 4416283, at *2-3 (D.
Vt. Sept. 24, 2008) (finding plaintiff's state-created right to continued employment as town's
Chief of Police not the type of fundamental constitutional interest that could invoke the
protection of substantive due process).  Further, many other circuits have found that
continued public employment is not protected by substantive due process.  See Martin, 2008
WL 4416283, at *2 (collecting cases).

- 19 -

The complaint alleges that defendants deprived plaintiff of his "constitutionally protected property and liberty interest in that Plaintiff was removed from the work schedule for lawfully performing his duties; precluded from working on account of a retaliatory change in the work schedule; and then terminated." Ver. Amend. Comp., Dkt. No. 31, ¶ 51. It further states that "[d]efendants' actions are malicious, conscience shocking and intended by Defendants to serve their own personal interests at the expense of the rule of law and law abiding citizens." Id. ¶ 52. Plaintiff has not alleged any constitutionally protected property or liberty interest other than his continued public employment as a part-time Village police officer. Because such an interest is not entitled to substantive due process protection, he cannot survive summary judgment on these claims.

For these reasons, defendants' motion for summary judgment will be granted as to the Third and Seventh causes of action.

### D) Equal Protection Claims[11]

Defendants argue plaintiff's equal protection claims, the Fourth and Eighth causes of action, fail because he is not a member of a suspect class and has not produced any evidence to show that other officers did not enforce the DWI law during the relevant period. To assert an equal protection violation, a plaintiff must show he was "selectively treated compared with other similarly situated employees, and that selective treatment 'was based on impermissible considerations.'" Knight v. Conn. Dep't of Pub. Health, 275 F.3d 156, 166 (2d Cir. 2001).

---

[11] As with the prior federal and state constitutional claims, the equal protection analysis is nearly identical under both the New York State Constitution and the United States Constitution. Febres, 238 F.R.D. at 392.

Plaintiff claims he is in a protected class of "Police Officers who enforce the law through arrests for Driving While Intoxicated and uphold the Constitution and laws of the United States and the State of New York in the performance of their duties."  Ver. Am. Compl., ¶ 56.  He alleges he was treated differently because he lawfully enforced the DWI law and arrested the Mayor's friends.  However plaintiff fails to advance any facts showing he was treated differently than other similarly situated employees.  The June 2009 memorandum requiring strict adherence to the scheduled shifts applied to all part-time officers including Officer Wrobel who previously worked a modified shift.  Nor has plaintiff produced evidence with respect to other officers enforcing and being punished for, or failing to enforce, the DWI law during the relevant period.  Plaintiff cannot prove he was treated differently as a result of his enforcement of the DWI law during the relevant period and conceded such at oral argument.

For these reasons defendants' motion for summary judgment will be granted as to the <u>Fourth</u> and <u>Eighth</u> causes of action.

**E) <u>State Law Contract Claims</u>**

Defendants move to dismiss the <u>Ninth</u> (breach of contract) and <u>Tenth</u> (tortious interference with contract) claims.  These causes of action allege that defendants breached the terms of PBA Agreement by not dealing in good faith with plaintiff and that defendants interfered with, and caused, the breach.  Because the PBA Agreement did not apply to plaintiff and he did not have an employment contract with the Village, summary judgment will be granted as to the <u>Ninth</u> and <u>Tenth</u> causes of action.

### F) **Remaining State Law Claims**

While defendants request dismissal of the complaint in its entirety, they did not address the <u>Eleventh</u> (prima facie tort) and <u>Twelfth</u> (loss of consortium) causes of action. Because the federal First Amendment retaliation claim remains for trial, these supplemental state law causes of action will not be dismissed and defendants' motion for summary judgment will be denied.

## IV.  **CONCLUSION**

Defendants' motion for summary judgment dismissing the <u>Second</u> (Fourteenth Amendment procedural due process) and <u>Sixth</u> (N.Y. Const., Art. 1, section 6, procedural due process) claims will be granted because plaintiff's position as a part-time police officer with the Village was not covered by the PBA Agreement and he cannot invoke the protection of Civil Service Law section 75.  For these reasons plaintiff did not have a property interest in his employment and was not entitled to a hearing prior to termination. The motion will also be granted as to the <u>Third</u> (Fourteenth Amendment substantive due process) and <u>Seventh</u> (N.Y. Const., Art. 1, section 6, substantive due process) claims because plaintiff's continued employment as a part-time Village police officer was not entitled to substantive due process protection.  The <u>Fourth</u> (Fourteenth Amendment equal protection) and <u>Eighth</u> (N.Y. Const., Art. 1, section 11, equal protection) causes of action will be dismissed because plaintiff cannot establish that he was treated differently than others similarly situated and conceded such at oral argument.  Defendants' motion will also be granted as to the <u>Ninth</u> (breach of contract) and <u>Tenth</u> (tortious interference with contract) claims because there was no governing contract between plaintiff and the Village.

Defendants' motion for summary judgment dismissing the <u>First</u> (First Amendment retaliation) and <u>Fifth</u> (N.Y. Const., Art. 1, section 8, free speech) causes of action will be denied because plaintiff's June 11, 2009, Notice of Claim addressed a matter of public concern.  Summary judgment will be also be denied as to defendants Mahoney and Babiarz because issues of fact exist as to whether there is a causal connection between plaintiff's protected activity and their decision to terminate him.  The <u>Eleventh</u> (prima facie tort) and <u>Twelfth</u> (loss of consortium) causes of action also remain for trial because defendants have not shown they are entitled to judgment as a matter of law on these claims.

Therefore, it is

ORDERED that

1.  Defendants' motion for summary judgment is GRANTED IN PART and DENIED IN PART;

2. The <u>Second</u> (Fourteenth Amendment procedural due process); <u>Third</u> (Fourteenth Amendment substantive due process); <u>Fourth</u> (Fourteenth Amendment equal protection); <u>Sixth</u> (N.Y. Const., Art. 1, section 6, procedural due process); <u>Seventh</u> (N.Y. Const., Art. 1, section 6, substantive due process); <u>Eighth</u> (N.Y. Const., Art. 1, section 11, equal protection); <u>Ninth</u> (Breach of contract); and <u>Tenth</u> (Tortious interference with contract) Causes of Action are DISMISSED; and

3.  The <u>First</u> (First Amendment retaliation); <u>Fifth</u> (N.Y. Const., Art. 1, section 8, free speech); <u>Eleventh</u> (Prima facie tort); and <u>Twelfth</u> (Loss of consortium) Causes of Action remain for trial.

IT IS SO ORDERED.

_____
United States District Judge

Dated: March 4, 2011
        Utica, New York.